IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JIMMY FRANK CAMERON (AIS# 105591) | § § | |
| Plaintiff, | § § | |
| v. | § | 2:06-CV-1115-MHT |
| | § § | |
| RICHARD ALLEN, et al. | § § | |
| Defendants. | § § § | |

**SUPPLEMENTAL SPECIAL REPORT OF DEFENDANTS PRISON HEALTH SERVICES, INC. AND TAHIR SADDIQ, M.D.**

COME NOW Defendants, Prison Health Services, Inc. (hereinafter "PHS") and Tahir Siddiq, M.D. (identified in Plaintiff's Complaint as "Doctor Siddiq") in response to this Honorable Court's Order of March 1, 2007 and present the following argument in supplement to their pending Special Report in this matter:

### I. ARGUMENT

A. **The Plaintiff failed to exhaust his administrative remedies prior to filing suit in violation of the Prison Litigation Reform Act (PLRA).**

Congress enacted the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e et seq., in 1996 in the wake of a sharp rise in prisoner litigation in the federal courts. See, e.g., Alexander v. Hawk, 159 F.3d 1321, 1324-1325 (CA11 1998) (citing statistics).[1] The PLRA was enacted in attempts to eliminate unwarranted federal-court interference with the administration of prisons, and

---

[1] The PLRA contains a variety of provisions designed to bring inmate litigation under control. See, e.g., § 1997e(c) (requiring district courts to weed out prisoner claims that clearly lack merit); § 1997e(e) (prohibiting claims for emotional injury without prior showing of physical injury); § 1997e(d) (restricting attorney's fees).

thus, to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Nussle, 534 U.S., at 525, 122 S. Ct. 983, 152 L. Ed. 2d 12. See also Booth, 532 U.S., at 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958. The PLRA was also designed to "reduce the quantity and improve the quality of prisoner suits." Nussle, supra, at 524, 122 S. Ct. 983, 152 L. Ed. 2d 12.

A centerpiece of the PLRA's effort "to reduce the quantity . . . of prisoner suits" is an "invigorated" exhaustion provision. See § 1997e(a), and Porter v. Nussle, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).[2] Specifically, the PLRA provides that prisoners may not file suit in Federal court for complaints regarding prison conditions unless they have first fully extinguished all administrative remedies available. Specifically,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e (a) (2000 ed.) (emphasis added).

Id. Courts have determined that under the PLRA, exhaustion of administrative remedies is no longer left to the discretion of the district court, but is mandatory. See Booth v. Churner, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001) (emphasis added). 42 USC § 1997e states:

---

[2] Requiring proper exhaustion gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors. This is particularly important in relation to state corrections systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." Preiser v. Rodriguez, 411 U.S. 475, 491-492, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973).

> (c) Dismissal
> (1) The court <u>shall</u> on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

<u>Id</u>. (emphasis added).

In order to avoid dismissal, prisoners must exhaust all "available" remedies, not just those that meet federal standards. Moreover, exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983. <u>See</u> <u>Nussle</u>, <u>supra</u>, at 524, 122 S. Ct. 983, 152 L. Ed. 2d 12. <u>See</u> <u>Pozo v. McCaughtry</u>, 286 F.3d 1022, 1025 (CA7) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require"), cert. denied, 537 U.S. 949, 123 S. Ct. 414, 154 L. Ed. 2d 293 (2002); <u>Ross v. County of Bernalillo</u>, 365 F.3d 1181, 1185-1186 (CA10 2004) (same); <u>Spruill v. Gillis</u>, 372 F.3d 218, 230 (CA3 2004) (same); <u>Johnson v. Meadows</u>, 418 F.3d 1152, 1159 (CA11 2005) (same).

A prisoner's lack of knowledge regarding the existence of the procedure does not relieve his/her responsibility to exhaust administrative remedies, and failure of officials to provide grievance forms is not a legitimate defense. <u>See</u> <u>Abney v. McGinnis</u>, 380 F. 3d 663 (2nd Cir. 2004). So long as the prisoner has access to writing material and officials do not interfere with the procedure, the process must be followed to conclusion before suit is filed. <u>Id.</u>

As relevant to the case at bar, Prison Health Services, Inc. (PHS) has established a simple three-step procedure for identifying and addressing inmate grievances at Bullock

County Correctional Facility. (See Exhibit "A"). If an inmate has a grievance regarding a healthcare issue he must submit to the healthcare unit a "Medical Complaint Form." (Id.) These are standard forms that may be requested from an inmate's supervising officer in his dormitory. (Id.) The inmate medical complaint form allows an inmate to communicate any healthcare related concern by placing the medical complaint form in the sick call box or mailbox to be forwarded to the healthcare unit. (Id.) Brandee Player, H.S.A., Bullock's Health Services Administrator, subsequently reviews the request and responds accordingly via in-house mail. (Id.) Also, when deemed necessary, the inmate will receive a face-to-face interview with Ms. Player or the doctor or both. (Id.) At this time, the needs of the inmate are addressed and treatment is discussed. (Id.)

If an inmate is unsatisfied with Ms. Player's response, he may request an "Inmate Formal Grievance" form from the healthcare unit. (Id.) This form allows an inmate to again voice his concerns relating to the healthcare issue addressed with the medical complaint form. (Id.) Ms. Player again responds to the inmate via in-house mail. (Id.)

If the inmate is still unsatisfied with Ms. Player's response, he or she may request from the healthcare unit an "Inmate Grievance Appeal" form. (Id.) This form is again submitted to Ms. Player and represents the final step of the appeal process. (Id.) After an inmate submits an inmate grievance appeal, Ms. Player will meet with the inmate face-to-face in a final attempt to address his concerns verbally. (Id.)

Jimmy Cameron has filed suit in this matter alleging that PHS and Tahir Siddiq, M.D. have failed to provide him with appropriate medical care. (Id.) However, Mr. Cameron has failed to exhaust Bullock's informal grievance procedure relating to the receipt of medical care for this alleged condition. (Id.) Specifically, Mr. Cameron has not

submitted an Inmate Formal Grievance Form or an Inmate Grievance Appeal Form. (Id.) As such, the healthcare unit at Bullock County Correctional Facility has not been afforded the opportunity to resolve Mr. Cameron's medical complaints prior to filing suit. (Id.)

Since Mr. Cameron has failed to extinguish those administrative remedies available for him at Bullock, the Prison Litigation Reform Act of 1995 (PLRA) demands that the Plaintiff's lawsuit be dismissed. (Id.)

## II. CONCLUSION

The Plaintiff's Complaint is due to be dismissed on its face, and is, further, disproven by the evidence now before the Court. All of the Plaintiff's requests for relief are without merit. The Defendants have demonstrated both through substantial evidence and appropriate precedent that there is not any genuine issue of material facts relating to a constitutional violation, and that they are, therefore, entitled to a judgment in their favor as a matter of law. The Plaintiff's submissions clearly fail to meet his required burden. Moreover, since the Plaintiff failed to exhaust those administrative remedies available to him at Bullock prior to filing suit, this case is due to be dismissed pursuant to the PLRA.

Accordingly, the Defendants renew their request that their Special Report be treated and denominated as a Motion to Dismiss and/or a Motion for Summary Judgment and that this Honorable Court either dismiss the Plaintiff's Complaint, with prejudice, or enter a judgment in their favor.

Respectfully submitted,

*s/ R. Brett Garrett*
R. BRETT GARRETT (GAR085)
Attorney for Prison Health Services, Inc.

RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 834-8480
Fax: (334) 262-6277
E-mail: bg@rsjg.com

## CERTIFICATE OF SERVICE

I hereby certified that I have mailed via U.S. mail, properly addressed and first-class postage prepaid, the foregoing document this 15th day of March, 2007 to the following:

Jimmy Frank Cameron (AIS # 105591)
Bullock Correctional Facility
P.O. Box 5107
Union Springs, AL 36089-5107

*s/ R. Brett Garrett*
Of Counsel

6

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JIMMY FRANK CAMERON (AIS# 105591) | § § § | |
| Plaintiff, | § § | |
| v. | § § | 2:06-CV-1115-MHT |
| RICHARD ALLEN, et al. | § § § | |
| Defendants. | § § § | |

### AFFIDAVIT OF BRANDEE PLAYER, H.S.A.

BEFORE ME, Justine Persons, a notary public in and for said County and State, personally appeared BRANDEE PLAYER, H.S.A., and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of her ability, information, knowledge and belief, as follows:

"My name is Brandee Player. I am over the age of twenty-one and am personally familiar with all of the facts set forth in this Affidavit. I hold a Master's Degree in Health Services Administration from Barry University in Miami Shore, Florida. I have worked as the Prison Health Administrator at Bullock County Correctional Facility in Union Springs, Alabama, since November 6, 2006. Since this date, I have been employed as the Health Service Administrator (H.S.A.) for Bullock County Correctional Facility by Prison Health Services, Inc., the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates.



DEFENDANT'S EXHIBIT A

Prison Health Services, Inc. (PHS) has established a simple three-step procedure for identifying and addressing inmate grievances at Bullock County Correctional Facility. If an inmate has a grievance regarding a healthcare issue he must submit to the healthcare unit a "Medical Complaint Form." These are standard forms that may be requested from an inmate's supervising officer in his dormitory. The inmate medical complaint form allows an inmate to communicate any healthcare related concern by placing the medical complaint form in the sick call box or mailbox to be forwarded to the healthcare unit. I subsequently review the request and respond accordingly via in-house mail. Also, when deemed necessary, the inmate will receive a face-to-face interview with me or the doctor or both. At this time, the needs of the inmate are addressed and treatment is discussed.

If an inmate is unsatisfied with my response, he may request an "Inmate Formal Grievance" form from the healthcare unit. This form allows an inmate to again voice his concerns relating to the healthcare issue addressed with the medical complaint form. I again respond to the inmate via in-house mail.

If the inmate is still unsatisfied with my response, he or she may request from the healthcare unit an "Inmate Grievance Appeal" form. This form is again submitted to me and represents the final step of the appeal process. After an inmate submits an inmate grievance appeal, I will meet with the inmate face-to-face in a final attempt to address his concerns verbally.

It is my understanding that Jimmy Cameron has filed suit in this matter alleging that PHS and Tahir Siddiq, M.D. have failed to provide him with appropriate medical care. However, Mr. Cameron has failed to exhaust Bullock's informal grievance procedure relating to the receipt of medical care for this alleged condition. Specifically, Mr. Cameron has not submitted an Inmate

Formal Grievance Form or an Inmate Grievance Appeal Form. As such, the healthcare unit at Bullock County Correctional Facility has not been afforded the opportunity to resolve Mr. Cameron's medical complaints prior to filing suit.

 Further affiant sayeth not.

                _____
                BRANDEE PLAYER, H.S.A.

STATE OF ALABAMA    )
              )
COUNTY OF Bullock  )

 Sworn to and subscribed before me on this the _15th_ day of _March_, 2007.

                _____
                Notary Public

My Commission Expires:
_2/24/2009_