IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JIMMY FRANK CAMERON, #105591, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:06-CV-1115-MHT |
| | ) [WO] |
| | ) |
| RICHARD ALLEN, et al., | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Jimmy Frank Cameron ["Cameron"], a state inmate, challenges the constitutionality of medical treatment provided to him by Dr. Tahir Siddiq during his confinement at the Bullock County Correctional Facility ["Bullock"]. Specifically, Cameron asserts that Dr. Siddiq failed to provide him appropriate treatment for back pain. Cameron names Richard Allen, commissioner of the Alabama Department of Corrections, Prison Health Services, Inc. ["PHS"], the contract medical care provider for the Alabama prison system at the time of the challenged treatment, and Dr. Tahir Siddiq, a physician employed at Bullock, as defendants in this cause of action.

The defendants filed special reports and supporting evidentiary materials addressing Cameron's claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to treat the defendants' reports as motions for summary judgment. *Order of March 16, 2007 - Court Doc. No. 32*. Hence, this case is now pending on the defendants' motions for summary judgment. Upon consideration of these motions, the evidentiary

materials filed in support thereof and the plaintiff's responses in opposition to the motions, the court concludes that the defendants' motions for summary judgment are due to be granted.

## I.  STANDARD OF REVIEW

To survive the defendants' properly supported motions for summary judgment, Cameron must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (nonmoving party is required to produce "sufficient [favorable] evidence" indicating he is entitled to relief sought). "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson v. Liberty Lobby*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  A party's conclusory allegations similarly do not provide sufficient evidence to oppose a properly supported motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984).  Thus, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case and on which the plaintiff bears the burden of proof, summary judgment is due

to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment for the defendants is appropriate).

To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Consequently, where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Cameron has failed to meet the requisite burden so as to preclude entry of summary judgment in favor of the defendants. *Matsushita*, *supra*.

## II.  DISCUSSION

### A.  Deliberate Indifference

To prevail on an Eighth Amendment claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that those responsible for providing medical treatment acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, correctional officials or prison medical personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989). "In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth

Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle*, 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel,* 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977))." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985) (mere fact that a prisoner desires a different mode of medical treatment does not amount to deliberate indifference). A correctional official or health care provider may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's health when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A constitutional violation occurs only when a plaintiff establishes the existence of "a

substantial risk of serious harm, of which the official is subjectively aware, ... and [that] the official does not 'respond[] reasonably to the risk'...." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844. Thus, in order to survive summary judgment on this claim, the plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a "'sufficiently culpable state of mind.'"" *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious `harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

### A. The Claims Against Commissioner Richard Allen

1. <u>Absolute Immunity</u>.  To the extent Cameron sues defendant Allen in his official capacity, this defendant is immune from suit. Official capacity lawsuits are "in all respects other than name ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has

abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that defendant Allen is a state official entitled to Eleventh Amendment immunity when sued in his official capacity. Thus, defendant Allen is entitled to absolute immunity from the plaintiff's claims for relief lodged against him in his official capacity.

2. Individual Capacity. The instant complaint is devoid of any specific claim for relief against defendant Allen. It is clear from the pleadings filed in this case that defendant Allen is not a health care professional and is named as a defendant solely due to his supervisory position with the Alabama Department of Corrections. "There is 'no *respondeat superior* liability for a § 1983 claim.' *Marsh [v. Butler County, Alabama*, 268 F.3d 1014, 1035 (11th Cir. 2001) (*en banc*)]. Although § 1983 requires a connection between the official's acts or omissions and the plaintiff's injury, an official also may be liable where a policy or custom that he established or utilized resulted in deliberate indifference to an inmate's constitutional rights. *Id.* at 1059." *Salas v. Tillman*, 162 Fed.Appx. 918, 922 (11th Cir. 2006).

Cameron has presented no evidence sufficient to create a genuine issue of disputed fact with respect to defendant Allen and the pending claims that health care personnel acted with deliberate indifference to his medical needs. There is nothing before the court which indicates that defendant Allen personally participated in or had any direct involvement with the medical treatment provided to Cameron. Additionally, the undisputed evidentiary materials demonstrate that medical personnel made all decisions relative to the course of treatment provided to Cameron and further establish that such treatment did not result from a policy instituted by defendant Allen. The law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See*, *e.g.*, *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir.1993); *White v. Farrier,* 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala*., 198 Fed.Appx. 893, 897 (11th Cir. 2006).

Defendant Allen cannot be held liable in an action brought pursuant to 42 U.S.C. § 1983 under the theory of respondeat superior or on the basis of vicarious liability. *Monell*

*v. Dep't of Social Servs.,* 436 U.S. 658, 690-92, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994); *LaMarca v. Turner,* 995 F.2d 1526, 1538 (11th Cir.1993), *cert. denied,* 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994). The record contains no evidence that defendant Allen had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Cameron, that defendant Allen actually drew this inference and thereafter ignored the risk. Cameron has therefore failed to establish the requisite element of subjective awareness on the part of defendant Allen. *Carter*, 352 F.3d at 1350. Consequently, summary judgment is due to be granted in favor of defendant Allen.

### B. The Claims Against PHS and Dr. Siddiq

Cameron challenges the constitutionality of medical treatment provided to him by Dr. Siddiq for back pain. Specifically, Cameron asserts that Dr. Siddiq denied him "decompression therapy for pinch[ed] nerves in [his] back." *Plaintiff's Complaint - Court Doc. No. 1* at 3. Cameron further complains that Dr. Siddiq prescribed Tylenol for his complaints when this medication is contraindicated by his liver condition, i.e., Hepatitis C. *Plaintiff's Amendment to the Complaint - Court Doc. No. 11* at 1. Cameron also contends that Dr. Siddiq denied him adequate medical treatment "because of this civil action." *Id.*

In response to the claims presented in the complaint, the medical defendants assert that Dr. Siddiq provided necessary and appropriate treatment to Cameron for his complaints

of back pain and argue that this case is due to be dismissed because Cameron failed to properly exhaust his administrative remedies as directed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). In support of their exhaustion defense, the medical defendants argue that Cameron did not properly exhaust each step of the grievance procedure implemented by PHS as he failed to proceed beyond the initial filing of inmate complaint forms. *Medical Defendants' March 15, 2007 Supplemental Special Report - Court Doc. No. 31* at 4-5; *Medical Defendants' May 7, 2007 Response - Court Doc. No. 53* at 2-4. Specifically, after receiving responses to his inmate complaints addressing the medical treatment provided to him at Bullock for back pain, Cameron did not continue the grievance process by filing an inmate formal grievance form nor complete the grievance process by filing an inmate grievance appeal.

The PLRA requires exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a 42 U.S.C. § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) directs that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander* v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, ___ U.S. ___, 126 S.Ct. 2378 (2006). Moreover, "the PLRA exhaustion requirement requires ***proper*** exhaustion." *Ngo*, 126 S.Ct. at 2387 (emphasis added).

      The Supreme Court in *Ngo* determined "[proper exhaustion] means ... that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." 126 S.Ct. at 2384. The Court further explained "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [prior to seeking relief from a federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings.... Construing § 1997e(a) to require proper exhaustion ... fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id.* at 2386. This interpretation of the PLRA's exhaustion requirement "carries a sanction" for noncompliance and avoids "mak[ing] the PLRA exhaustion scheme wholly ineffective." *Id.* at 2388. Consequently, a prisoner cannot "proceed ... to federal court"

after bypassing available administrative remedies, either by failing to properly exhaust administrative remedies or waiting until such remedies are no longer available, as allowing federal review under these circumstances would impose "no significant sanction" on the prisoner and "the PLRA did not create such a toothless scheme." *Id*.

The record before the court establishes that during the time of Cameron's confinement in the Alabama prison system relevant to this case PHS provided a three-step grievance procedure for inmate complaints. The undisputed evidentiary materials submitted by the medical defendants demonstrate that Cameron failed to properly exhaust the grievance procedure with respect to the actions about which he complains in the instant cause of action. In response to this argument, Cameron initially asserts that his filing inmate complaints addressing his claims constitutes exhaustion of the grievance procedure. Cameron also argues that grievance forms submitted to officials at the Hamilton Aged and Infirmed Correctional Facility ["Hamilton"] regarding treatment provided to him at such facility between June 29, 2006 and September 6, 2006 establishes exhaustion. The Supreme Court in *Ngo* rejects Cameron's partial exhaustion argument in that *Ngo* mandates proper exhaustion which requires that an inmate "complete the administrative review process in accordance with the applicable procedural rules ... as a precondition to bringing suit in federal court." 126 S.Ct. at 2384. Moreover, the filing of grievance forms addressing medical treatment at Hamilton, treatment wholly unrelated to the medical treatment about which the plaintiff complains in the instant cause of action, does not

demonstrate proper exhaustion of the grievance procedure as to the instant claims for relief. The court therefore concludes that the claims for relief presented in this cause of action against PHS and Dr. Siddiq are subject to dismissal as Cameron did not properly exhaust an administrative remedy previously available to him which is a precondition to proceeding in this court on his claims. *Ngo*, 126 S.Ct. at 2384-2388.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for summary judgment filed by defendant Allen be GRANTED.

2. The claims against defendant Allen be dismissed with prejudice.

3. The motion for summary judgment filed by defendants PHS and Dr. Siddiq be GRANTED to the extent these defendants seek dismissal of this case due to the plaintiff's failure to exhaust an administrative remedy.

4. The claims against PHS and Dr. Siddiq be DISMISSED in accordance with the provisions of 42 U.S.C. § 1997e(a).  *Woodford v. Ngo*, ___ U.S. ___, 126 S.Ct. 2378 (2006).

5. This case be DISMISSED.

6. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before November 27, 2007 the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the

Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 14th day of November, 2007.

    /s/Terry F. Moorer
    TERRY F. MOORER
    UNITED STATES MAGISTRATE JUDGE